**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ALFONSO DAVENPORT**                                                           **PLAINTIFF**

**VS.**                          **NO. 5:05CV00213 BD**

**BOARD OF TRUSTEES**
**OF THE UNIVERSITY OF**
**ARKANSAS, et al.**                                                            **DEFENDANTS**

<u>**ORDER**</u>

The following motions are pending: (1) Defendants' Motion for Summary
Judgment (docket entry #34); (2) Plaintiff's Second Motion for Extension of Time to File
Response/Reply to Motion for Summary Judgment (#49); (3) Plaintiff's Motion to
Dismiss Specific Parties and Claims (#63); (4) Plaintiff's Motion to Withdraw Motion to
Dismiss Specific Parties and Claims (#64); and (5) Defendants' Motion to Strike
Plaintiff's Brief in Support of his Response to the Motion for Summary Judgment (#66).

Plaintiff has filed a Response to the Motion for Summary Judgment (#51).
Accordingly, Plaintiff's Second Motion for Extension of Time to File Response/Reply to
Motion for Summary Judgment (#49) is DENIED as moot.  Plaintiff's Motion to
Withdraw Motion to Dismiss Specific Parties and Claims (#64) is GRANTED.
Therefore, Plaintiff's Motion to Dismiss Specific Parties and Claims (#63) is DENIED as
moot.  Defendants' Motion to Strike Plaintiff's Brief in Support of his Response to the

1

Motion for Summary Judgment (#66) is DENIED.  For the reasons set forth below, the

Defendant's Motion for Summary Judgment (#34) is GRANTED.

## I.      Facts

Plaintiff is a fifty-six-year-old African-American male who has been employed by

the University of Arkansas at Pine Bluff ("UAPB") in its Department of Public Safety

("DPS") for the past twenty-four years.  In August, 1987, Plaintiff was promoted to the

position he currently holds, Public Safety Officer II.   Plaintiff's responsibilities in this

position include patrolling the campus, acting as a shift-supervisor, developing firearm

training, investigating criminal activity, preparing criminal reports, and coordinating

crime prevention awareness programs.

Defendant Lawrence A. Davis, Jr. is the Chancellor of UAPB.  Defendant Willie

Gilmore is the former Vice Chancellor for Student Affairs at UAPB and in that position

was responsible for the direct supervision of several departments, including the DPS.

Defendant Elbert Bennett is currently the Interim Vice Chancellor for Student Affairs at

UAPB and formerly was Executive Assistant to the Chancellor.  In 2004-2005, Bennett

served as chair of the search committee charged with identifying finalists for the position

of Chief of the DPS at UAPB.  Bennett also served as Grievance Committee Chair from

1992 until 2002.  All of the individual Defendants are African-American.

In January 2001, Plaintiff filed a grievance claiming then Chief of the DPS,

Donnie Savage, failed to follow proper procedures during an interview process denying

him a promotion to the position of Director of Public Safety.  Savage responded to the

grievance and Defendant Gilmore upheld the decision.  Plaintiff claims that Defendant

Davis denied him a hearing on his 2001 grievance in violation of UAPB's grievance

policy.

In January of 1999, Plaintiff complained about the lack of equipment, uniforms,

parking in the DPS, and Savage's use of DPS resources for his independent security

business to DPS Captain Harvey Jones, Plaintiff's direct supervisor.  Plaintiff also

mentioned his concerns about the lack of equipment, uniforms, and parking to Defendant

Gilmore in passing.

On January 9, 2002, the Arkansas State Police launched an investigation into

Savage's alleged misuse of the Arkansas Crime Information Center ("ACIC") system at

UAPB for his personal business, D.R.S., Inc.  The ACIC is used to conduct criminal

background checks within the state.  Plaintiff and other police officers at UAPB received

word through their department that they should report to the Jefferson County Prosecuting

Attorney's Office to give a statement for the ongoing investigation.  Plaintiff gave a

statement on January 23, 2002.  The written summary of Plaintiff's statement indicates

Plaintiff told the investigator:  (1)  he never worked for D.R.S., Inc.; (2) Savage owned

D.R.S., Inc., (3) about firearms training at UAPB; and (4) the conduct of David Moore, a

D.R.S., Inc. employee.   Plaintiff never spoke with anyone, including Davis, Gilmore,

Bennett, or Savage, regarding the content of his statement to the police, and the statement was never disclosed to any of the Defendants by the investigator.

During the course of their investigation, the Arkansas State Police also obtained a five-page, hand-written statement from Fred Weatherspoon, who had formerly been a Major in the DPS at UAPB.  Weatherspoon's statement alleged that Savage misused the ACIC system and was engaged in illegal and immoral activity as Chief at UAPB.  Savage resigned his position as Chief at UAPB on July 8, 2002, and Weatherspoon was hired as his replacement in March, 2005.

Shortly after Savage's resignation, UAPB posted a job announcement for "Director of University Police" with an application deadline of August 2, 2002.  Plaintiff submitted his application materials.  Defendant Gilmore notified the Plaintiff that UAPB had decided to appoint Ms. Griffin to be interim Chief.  At the time of Savage's resignation, Griffin was the next in command within the DPS.

On October 3, 2004, UAPB posted an announcement seeking applicants for the Chief position.  The announcement contained an application deadline of November 1, 2004.  Plaintiff submitted an application packet pursuant to the October 3, 2004 announcement.  Interim Chief Betty Griffin, Captain Harvey Jones, former Chief Donnie Savage, and Leonard Richardson, all African-Americans, also submitted materials in response to the announcement.

On November 8, 2004, Gilmore appointed a Search Committee ("Committee") to assist with the selection process for the new UAPB Chief.  The Committee was charged with reviewing all of the applications, interviewing candidates, and recommending top candidates to Gilmore.  The Committee was chaired by Defendant Bennett and the other members were Shirley Cherry, Lee Hardman, Ivan Whitfield, and Chazmon Gates.  All of the members of the Committee are African-American.

In January 2005, the Chief position was reopened and readvertised with an open application deadline.  Defendant Bennett urged former Major Fred Weatherspoon to apply for the position and assured Weatherspoon that if he applied, he would have his support for the position.  Weatherspoon submitted an application packet on January 23, 2005.  Weatherspoon was the only applicant that had both municipal and university law enforcement experience.  Weatherspoon is also African-American.

The Committee interviewed five of the six candidates.  All of the candidates, except for Plaintiff, were interviewed by all five members of the Committee.  Plaintiff was interviewed by only three of the committee members because Ms. Cherry and Mr. Whitfield had scheduling conflicts.  After interviewing the candidates, the Committee rated each candidate by completing a "Selection Criteria Sheet."  Savage and Weatherspoon received the highest average scores.  The Committee submitted the names of Savage and Weatherspoon in unranked order to Defendant Gilmore for his review.

Gilmore decided to add one additional candidate and sent three finalists, Griffin, Savage, and Weatherspoon, to the Chancellor's Executive Cabinet.

The Chancellor's Executive Cabinet, composed of Defendant Davis, Mary Benjamin (an African-American female), Defendant Gilmore, and Defendant Bennett, interviewed each of the finalists.  Following the interviews, Gilmore recommended to Davis that Weatherspoon be hired for the Chief position.  Davis accepted Gilmore's recommendation, and UAPB hired Weatherspoon as Chief in March, 2005.

On April 18, 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against UAPB alleging race discrimination and retaliation.  The EEOC issued a right to sue letter on April 21, 2005.

## II.    Procedural History

Plaintiff brought this lawsuit on July 15, 2005 against the Board of Trustees of the University of Arkansas ("Board of Trustees") as well as Davis, Gilmore, and Bennett, individually and in their official capacities as representatives of the University of Arkansas at Pine Bluff.  Under 42 U.S.C. §§ 1981 and 1983, Plaintiff alleges a First Amendment free speech claim and Fourteenth Amendment procedural due process claim. Plaintiff also alleges racial discrimination and retaliation in violation of 42 U.S.C. § 2000e et seq (Title VII) and a state-law tort claim of outrage.

In response to the complaint, Defendants filed a Motion for Judgment on the Pleadings (#18).  The Court granted the motion and dismissed with prejudice Plaintiff's

outrage claim and his claims arising under 42 U.S.C. §§ 1981 and 1983 against the Board of Trustees, Defendants Davis, Gilmore, and Bennett in their official capacities. The Court also dismissed with prejudice Plaintiff's Title VII claims against Defendants Davis, Gilmore and Bennett in their individual capacities.

After the Court's order, the following claims remained: (1) Plaintiff's §§ 1981, 1983, and outrage claims against Defendants Davis, Gilmore, and Bennett in their individual capacities; and (2) Plaintiff's Title VII claims against the Board of Trustees and Defendants Davis, Gilmore, and Bennett in their official capacities.  Defendants have moved for summary judgment (#34) on all of the remaining claims.[1]

## III.   Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  FED. R.CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  See *Anderson*, 477 U.S. at 248-49; see

---

[1]Defendants have moved for summary judgment on an alleged Equal Protection claim.  However, under the Opinion and Order entered by this Court on May 15, 2007, an Equal Protection claim is not pending in this case.  Further, Plaintiff did not advance an Equal Protection claim in his Response to the Motion for Summary Judgement (#51) or his supporting Brief (#65).  Accordingly, the Court will not address Equal Protection in this Order.

also *Hartnagel v. Norman*, 953 F.2d 394, 395-96 (8th Cir.1992).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48 (emphasis omitted).  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex*, 477 U.S. at 322.

## IV.    Analysis

### A.    Title VII - Discrimination[2]

Plaintiff claims that in May, 2005, he was denied a promotion to Chief of the DPS because of his race, African-American.  To establish a prima facie case of discrimination under Title VII, Plaintiff must show:  (1) he is a member of a protected class; (2) he met his employer's legitimate expectations; (3) he suffered a materially adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably.  *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007). Once a prima facie case is established, a rebuttable presumption of discrimination arises

---

[2]Plaintiff did not address his Title VII claim in his Response to Defendants' Motion for Summary Judgement (#51) or his Brief in Support of Response to Defendants' Motion for Summary Judgment (#65).  As previously discussed in this order, Plaintiff moved to dismiss some claims, including his Title VII claim (#63), but shortly thereafter filed a Motion to Withdraw his Motion to Dismiss (#64).  The Court has granted Plaintiff's Motion to Withdraw (#64).  Accordingly, the Court addresses Plaintiff's Title VII claim on Defendants' Motion for Summary Judgment.

and the burden then shifts to the employer to articulate a legitimate nondiscriminatory business reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U .S. 792, 802, 93 S.Ct. 1817 (1973).  Once such a reason is produced, "the presumption disappears and the [plaintiff] bears the burden of proving that the proffered reason was pretextual and the real reason for the [adverse employment action] was discrimination." *Thomas v. First Nat'l Bank*, 111 F.3d 64 (8th Cir. 1997).

The Plaintiff cannot establish the fourth element of a prima facie case of race discrimination.  Plaintiff has not provided the Court with any evidence regarding employees outside of the protected class whom Defendants treated more favorably.  All of the candidates for the position of Chief were members of the protected class.  All of the decision makers in the process were members of the protected class.  Accordingly, Plaintiff has not made out a prima facie case of race discrimination.

Further, Defendants have articulated a legitimate, non-discriminatory reason for hiring Weatherspoon.  "Once the [defendant] advances a nondiscriminatory reason, [the plaintiff] must show, in this summary judgment proceeding, that [he] has sufficient admissible evidence from which a rational factfinder could find that the [defendant's] proffered nondiscriminatory reason was either untrue or not the real reason, and that intentional discrimination was the real reason." *Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir. 1997).  Evidence that Defendants hired a less qualified applicant for the position of Chief may support a finding that the employer's nondiscriminatory reason for

9

the hiring was pretextual. *Duffy v. Wolle*, 123 F.3d 1026 (8th Cir. 1997).  However, Plaintiff has not offered any evidence establishing that Weatherspoon was less qualified. Weatherspoon was the only candidate who had both municipal and university law enforcement experience and also had supervisory and training experience.

As the Eighth Circuit has said, "the employment discrimination laws have not vested in the federal courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995).  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Title VII discrimination claim is GRANTED.

**B.      Title VII - Retaliation**

In his Complaint, Plaintiff claims that Defendants retaliated against him in violation of Title VII.  Title VII's anti-retaliation provision only protects employees against employer actions that "discriminate against" an employee because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Burlington Northern and Santa Fe Ry. Co.  v. White*, ___ U.S. ___, 126 S.Ct. 2405, 2415 (citing 24 U.S.C. § 2000e 3(a)).

Plaintiff is not claiming he suffered an adverse employment action because he filed a charge with the EEOC or reported discriminatory behavior, but instead, Plaintiff

appears to be claiming Defendants denied him a promotion in March, 2005 because he spoke out about a lack of resources within the department or about a supervisor's inappropriate business dealings between 1999 and 2002.  The alleged retaliation does not in any way relate to Plaintiff's Title VII discrimination claim.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Title VII retaliation claim is GRANTED.

**C.     42 U.S.C. § 1981**[3]

Defendants Davis, Gilmore, and Bennett have moved for summary judgment on Plaintiff's 42 U.S.C. § 1981 claim.  "A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004). One way for the claimant to establish the second element, that is, the defendant's intent to discriminate, is to show that he was treated differently from similarly situated nonmembers of the protected class. *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005).  As set forth above, Plaintiff has not produced evidence from which the Court could make an inference that Defendants Davis, Gilmore, and Bennett intended to discriminate against Plaintiff on the basis of his race.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's 42 U.S.C. § 1981 claim is GRANTED.

---

[3]Plaintiff did not address his 42 U.S.C. § 1981 claim in his Brief in Support of Response to Motion for Summary Judgment (#65).

**D.    42 U.S.C. § 1983**

1.    *Statute of Limitations*

The limitation period in an action under 42 U.S.C. § 1983 is the state statute of limitations for personal injury actions.  See *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938 (1985).  Thus, in Arkansas, the applicable period for a § 1983 action is three years. See ARK.CODE ANN. § 16 56.105; *Morton v. City of Little Rock*, 934 F.2d 180, 183 (8th Cir. 1991).   The cause of action accrues on the date on which the adverse employment action is communicated to the plaintiff.  *Dring v. McDonald Douglas Corp*, 58 F.3d 1323, 1328 (8th Cir. 1995).

Plaintiff's Complaint was filed on July 15, 2005, and any claims Plaintiff has against Defendants that accrued before July 14, 2002, are time barred.  Thus, Plaintiff's claim that in January 2001, Defendants failed to follow proper procedures during an interview process denying him a promotion to the position of Director of Public Safety is barred by the statute of limitations.

2.    *First Amendment*

Plaintiff claims he was denied a "promotion" to Chief in September, 2002, and in May, 2005, because he engaged in speech protected by the First Amendment.  To establish a claim of unlawful retaliation for protected speech, a public employee must prove: (1) he spoke out as a citizen on a matter of public concern; (2) the defendant took adverse employment action against him; and (3) his protected speech was a substantial or

12

material factor in the adverse employment action.  See *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007) (citation omitted).

Plaintiff complains that he engaged in two types of protected speech that caused Defendants to retaliate against him.  First, Plaintiff claims he voiced complaints about the lack of uniforms, patrol cars, and patrol equipment.  Plaintiff also claims he complained about former Chief Savage's use of UAPB's resources for his personal business activities.  At his deposition, Plaintiff testified that in 1999 he had complained about these issues to Captain Harvey Jones and Major Griffin, his superiors, and had mentioned these complaints to Defendant Gilmore once in a passing conversation.

Plaintiff also testified about an incident sometime in 1999 or 2000 where then Chief Donnie Savage asked Plaintiff to run background checks through the ACIC system for some of Savage's private clients.  Plaintiff testified that he felt it was wrong to use the ACIC system in that manner and refused to do so.  When asked more specifically whom he had spoken to about this incident, Plaintiff testified he did not report these concerns to anyone "other than my captain and the people I work with.  They were knowledgeable of these things."

Plaintiff also points to the affidavit of Fred Weatherspoon who worked as the Director of Public Safety at UAPB from January 2, 2001 to August 31, 2001 before being hired as Chief in 2005.  In the affidavit, Weatherspoon states that Plaintiff "made various complaints regarding the lack of equipment and supplies and the resulting harm caused by

13

these things."  Weatherspoon further states that Plaintiff complained about Savage's use

of department resources for his private business and refused to participate in these

activities.  Weatherspoon claims Plaintiff made "complaints to Chancellor Davis and

Willie Gilmore concerning these matters and that as a result Savage sought to punish and

ultimately terminate Davenport."  However, this testimony is not corroborated by the

Plaintiff's testimony or the testimony of Defendant Davis.  To the contrary, Plaintiff

stated that he never reported these issues to any higher level of authority within the

university and never initiated a formal grievance about these complaints.  When Plaintiff

was asked specifically whether he had discussed these issues with Defendant Davis,

Plaintiff recalled a meeting he had with Defendant Davis where they discussed his being

"demoted" from investigator, but stated "I'm not exactly sure if we discussed these things

that I'm talking about with - - as far as lack of police cars and uniforms."

Second, Plaintiff claims he also engaged in First Amendment protected speech

when he gave a statement to the Arkansas State Police as part of an ongoing investigation

of former Chief Savage.  The investigator took statements from Plaintiff and all of the

UAPB public safety officers he was able to contact.  The written summary of Plaintiff's

statement indicates that the investigator and Plaintiff discussed the following topics:

(1) that he never worked for D.R.S., Inc.; (2) that Savage owned D.R.S., Inc., (3) the

firearms training at UAPB; and (4) the conduct of David Moore, a D.R.S., Inc. employee.

14

The Court finds that Plaintiff's alleged speech was not a substantial motivating factor in Defendants denying Plaintiff a promotion to Chief.  Further, the Court finds that in both instances Plaintiff was speaking within his duties as a public employee and not as private citizen on a matter of public concern.  Consequently, Plaintiff's speech is not protected by the First Amendment.

a.      Substantial Motivating Factor

Even assuming that Plaintiff's speech in both instances was protected by the First Amendment and Plaintiff was speaking as a private citizen on a matter of public concern, Defendants argue that Plaintiff cannot prevail on his § 1983 claim because Plaintiff has not offered any evidence to establish that the alleged protected speech was a substantial motivating factor in the decision not to promote him.  The Court agrees.

In order to establish a causal link between the alleged protected activity and the adverse employment action, a plaintiff must show that an employer's "retaliatory motive played a part in the adverse employment action."  *Kipp v. Missouri Highway and Transp. Com'n*, 280 F.3d 893 (8th Cir. 2002) (citing *Sumner v. United States Postal Service*, 899 F.2d 203, 208-09 (2d Cir. 1990)).

Plaintiff claims that there is a causal link between his protected speech and Defendants denying him a "promotion" to Chief in September, 2002.  This argument fails for several reasons.  First, when former Chief Savage resigned in 2002, UAPB advertised for the position but decided not to interview for or hire a new Chief.  Instead, Defendants

15

chose to temporarily fill the position vacated by Savage by appointing Betty Griffin, the next in command, as Interim Chief.  Thus, in 2002 Defendants did not have an open position.

Second, the Court finds that Plaintiff's speech could not have been a motivating factor in Defendant's decision to appoint Ms. Griffin Interim Chief.  According to Plaintiff's testimony, the only Defendant who was aware of Plaintiff's alleged speech was Defendant Gilmore.  Defendant Davis, not Defendant Gilmore, made the decision to appoint Griffin Interim Chief in 2002.

Third, Plaintiff argues that the fact that Ms. Griffin did not have a bachelor's degree, which was a requisite when UAPB filled the position in 2005, is evidence of Defendants' retaliatory motive.  However, it is undisputed that at the time Ms. Griffin was appointed Interim Chief, none of the Defendants knew that she did not have a bachelor's degree.  This information did not come to light until after the interview process in 2005.  Consequently, the Plaintiff has not presented the Court with evidence from which it can find that Plaintiff's speech was a motivating factor in Defendants' decision to appoint the next in command Interim Chief instead of promote Plaintiff.

Plaintiff also argues there is a causal connection between his speech and Defendants' failure to promote him to Chief in 2005.  This argument also fails.  It is undisputed that none of the Committee members who interviewed Plaintiff in 2005 had

any knowledge of Plaintiff's alleged speech.[4]  Further, none of the people on the Committee or decisionmakers in the process had any knowledge of Plaintiff's statements to the Arkansas State Police until after the lawsuit was filed.  Plaintiff has not alleged that Defendants asked members of the Committee not to advance Plaintiff's candidacy.  To the contrary, the decisionmakers have testified that their decision not to recommend Plaintiff for promotion was because they thought there was a candidate who was more qualified and had a broader range of experience than Plaintiff.  Further, the candidate selected for the position, Fred Weatherspoon, gave a statement to Arkansas State Police investigators that was highly critical of former Chief Savage and directly accused Savage of misusing UAPB personnel, resources, and the ACIC background services to promote his private business.[5]

The Eighth Circuit has held that the requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive. See *Rath v. Selection Research, Inc*., 978 F.2d 1087, 1090 (8th Cir.1992) (citing *Couty v. Dole*, 886 F.2d 147, 148 (8th Cir.1989) and *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 at 881 (9th Cir. 1989), cert.

---

[4]Defendant Bennet testified that he was not aware of this speech until after the lawsuit was filed.

[5]Plaintiff argues at length in his brief about actions Savage allegedly took to retaliate against him for his speech.  These facts are irrelevant.  Savage is not a defendant in this case.  He was not employed by UAPB in 2002 or 2005 when Plaintiff was allegedly denied a promotion and there is not evidence that Defendants consulted Savage when making their promotion decisions.

denied, 498 U.S. 814, 111 S.Ct. 53 (1990).  Conversely, when there is a gap in time

between the alleged protected activity and the alleged retaliation, it is evidence that there

is not an adequate connection between the two as a matter of law.  *Ross v. Kansas City*

*Power & Light Co.*, 293 F.3d 1041, 1051 (8th Cir. 2002) (holding that a six-year gap

between the protected activity and the adverse employment action was too great to

support a causal connection between the protected activity and the denial of denial of a

promotion as a matter of law); *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th

Cir. 1999) (holding a four-month gap between a sexual harassment complaint and

plaintiff's termination weakened plaintiff's argument of a causal link); *McNeely v. Ark.*

*Dept. of Correction*, 2007 WL 4365461 (E. D. Ark. December 10, 2007) (holding two-

year gap between protected activity and plaintiff's job rejection was too long to create a

connection between the two events).

   In this case, the gap of time between the alleged protected speech and the alleged

adverse employment action in 2005 does not support a causal connection between the

two.  The complaints about equipment and resources that Plaintiff describes took place

from 1999 to 2002.  Plaintiff gave his statement to the Arkansas State Police in January of

2002.  The decision not to promote Plaintiff to Chief did not occur until 2005, years later.

   The gap in time in this case between the alleged speech and the alleged adverse

employment action, along with the lack of knowledge of the speech on the part of the

decisionmakers, leads the Court to conclude that the speech was not a motivating factor in

the Defendants' decision not to promote the Plaintiff.  Therefore, Defendants are entitled
to summary judgment on Plaintiff's First Amendment claim.

        b.     First Amendment Protection

Even if Plaintiff's speech was causally connected to the alleged adverse
employment action, Plaintiff has not met his burden of establishing that the alleged
speech is entitled to First Amendment protection.  A court deciding whether a public
employee's speech is protected by the First Amendment, "must first determine 'whether
the employee spoke as a citizen on a matter of public concern.'"  *McGee v. Public Water
Supply, Dist. # 2 of Jefferson Co., Mo.*, 471 F.3d 918, 920 (8th Cir. 2006) (quoting
*Garcetti v. Ceballos*, 126 S.Ct. 1951, 1960 (2006)).  The Plaintiff bears the burden of
demonstrating that his speech is protected.  *Altonen*, 487 F.3d at 559.  This is a question
of law for the court.  *McGee*, 471 F.3d at 920 (citing *Connick v. Myers*, 461 U.S. 138, 148
n. 7, 103 S.Ct. 1684 (1983).

The United States Supreme Court addressed this issue in *Garcetti v. Ceballos*, 126
S.Ct. 1951, 1960 (2006) and held that "[w]hen public employees make statements
pursuant to their official duties, the employees are not speaking as citizens for First
Amendment purposes, and the Constitution does not insulate their communications from
employer discipline."  The test for whether a person speaks as a citizen or as a public
employee comes down to whether the speech is made "pursuant to official
responsibilities."  *Id*. at 1961.  "Restricting speech that owes its existence to a public

19

employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 1960; see also *McGee*, 471 F.3d at 921.  Additionally, the Court acknowledged that formal job descriptions are not dispositive of an employee's duties because they "often bear little resemblance to the duties an employee actually is expected to perform." *Id*. at 1962.

In *Bradley v. James*, 479 F.3d 536 (8th Cir. 2007), a university campus police officer gave a statement to an internal investigator regarding an incident that occurred on campus.  The officer stated that his supervisor arrived at the scene of the incident intoxicated and claimed he was fired because of the statement. *Id*. at 537.  The Eighth Circuit held that the case was controlled by *Garcetti* and found that the officer was not speaking as a citizen when he gave his statement to the investigator but that it was the officer's official responsibility to cooperate with the internal investigation.

In *McGee*, 471 F.3d 918, 920 (8th Cir. 2006), the Eighth Circuit held that the plaintiff, a manager for the water supply district, was not speaking as a citizen when he complained to two board members about environmental compliance of two district projects.  The plaintiff argued he was speaking as a citizen because he had been taken off of the projects, and therefore they were no longer part of his official duties. *Id*.  The Court held the projects fell within his overall supervisory duties and even though

20

environmental and public safety issues are normally matters of public concern, in this

case the speech was not protected. *Id.*

In his resume, Plaintiff describes his job duties to include firearm training,

applying investigative techniques and procedures, preparing criminal reports, and

coordinating and implementing a crime prevention awareness program.  In his

application, Plaintiff wrote it was his duty to "patrol campus, write reports, lock

buildings, crime prevention, and investigate criminal activity."  Defendant Gilmore

testified that as a Public Safety Officer II, Plaintiff also had responsibilities of a shift

supervisor for other patrol officers on duty.  When Plaintiff was asked why he complained

about the equipment and resource issues, Plaintiff testified that "patrolling the campus in

club cars with no lights, you know, it's just–it just felt-it wasn't safe for officers, even

with some of the traffic we get."  He further stated "it's not even safe to be an officer here

on campus" and "none of us had uniforms, and none of us had proper patrol equipment."

The Court finds that, like in *Bradley* and *McGee*, Plaintiff's comments about

equipment, uniforms, and the former Chief's use of UAPB resources were made by the

Plaintiff as part of the duties of his job.  The comments were directly related to his duty to

patrol campus, prevent crime, and supervise other officers on duty during his shift.

Plaintiff's testimony indicates he spoke as an employee to his supervisors.  He did not

make a public statement or inform the news media.  Accordingly, these statements are not

protected speech. See *Bradley*, 479 F.3d at 538; *McGee*, 471 F.3d at 921; see also *Falk v.*

*Phillips*, 2007 WL 4563939, at *6 (E.D. Ark. 2007) (holding that former assistant director

of a public health lab was speaking pursuant to his official and professional duties, not as

a citizen, when he reported problems at the lab to a federal surveyor because his job

duties included quality assurance and quality control).

Further, like the officer in *Bradley*, it was Plaintiff's duty to cooperate with the

Arkansas State Police investigation of Savage.  Plaintiff received word through his

department that he should report to the Jefferson County Prosecuting Attorney's Office to

give a statement in the ongoing investigation.  The investigator took statements from

Plaintiff and all of the UAPB public safety officers he was able to contact.  The written

summary of Plaintiff's statement indicates that he did not provide any information during

the interview related to the unauthorized use of the ACIC or any other alleged "immoral

conduct" within the DPS.  Plaintiff never spoke with anyone, including Davis, Gilmore,

Bennett, or Savage, regarding the content of his statement, and the investigator never

disclosed the existence or nature of Plaintiff's statements to anyone including any of the

individual Defendants.

The Court acknowledges that speech about criminal activity of public officials or

the waste of public funds is generally of public concern.  *Schilcher v. Univ. of Ark.*, 387

F.3d 959, 963 (8th Cir. 2004).  However, the Court finds that Plaintiff's statement given

to the Arkansas State Police at the request of his department as part of an ongoing

investigation, which made no mention of actual or potential wrongdoing that breached the

public's trust, was not given as a citizen but was given pursuant to Plaintiff's official and professional duties to cooperate with an investigation.  *Garcetti*, 126 S.Ct. at 1960. Neither Plaintiff's complaints about equipment and supplies or his statement to the Arkansas State Police is protected by the First Amendment.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's First Amendment claim is GRANTED.

      3.     *Procedural Due Process*[6]

     In order to state an actionable claim for a violation of procedural due process, a plaintiff must establish that he has a property interest in the promotion he sought.  See *Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701 (1972). "[W]here no such interest exists, there can be no due process violation."  *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (internal quotations omitted), cert. denied, 528 U.S. 966, 120 S.Ct. 402 (1999).  A property interest in a promotion cannot arise from unilateral expectations. *Geddes v. N.W. Mo. State Univ.*, 49 F.3d 426, 429 (8th Cir. 1995).  "Property interests. . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Roth*, 408 U.S. at 577.

---

[6]Defendants advanced arguments for summary judgment on both procedural and substantive due process in their brief.  Plaintiff makes it clear in his Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (#65) that he is alleging a constitutional violation of procedural due process, not substantive due process. Accordingly, the Court is only addressing procedural due process.

In support of his due process claim, Plaintiff offers the UAPB Promotion Policy.[7]

The policy provides, in relevant part:

> UAPB employees are given first consideration in filling staff vacancies. Employees wishing to apply for a position should come by the personnel Office and update their application and resume.  It will be determined by the Personnel office staff and/or the supervisor if each applicant meets the minimum qualifications set forth by the state.
>
> Applications from qualified individuals will be forwarded to the department head for his consideration and review.
>
> If a department head expresses a desire to promote someone who is currently employed at UAPB, the department head must submit an approved letter (stamped approved by the Chancellor or his designated appointee) to Personnel indicating that the position be filled by the appropriate person.

This statement does not support Plaintiff's claim to a property interest.  As the District Court stated in *Mummelthie v. City of Mason City, Iowa*, 873 F.Supp. 1293, 1331 (N.D. Iowa 1995), "[a] property interest is not established by general statements in handbooks . . . .  Rather, property interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment benefits unless specific conditions are met."  Further, "[w]hen and employer may consider subjective and objective factors in making promotion decisions, an applicant's expectation of promotion based on test

---

[7]Plaintiff also points to the Department of Public Safety Promotion Procedures in support of his procedural due process argument.  The Court finds that the Department of Public Safety Promotion Procedures are only applicable to positions to be filled within the DPS where the Director is the final decision maker.  These procedures are irrelevant to Plaintiff's application for the position of Chief.

rankings or prior employment fails to rise to the level of a property interest entitled to constitutional protection." *Meyer v. City of Joplin*, 281 F.3d 759, 762 (8th Cir. 2002).

The policy statement cited by Plaintiff in support of his claim does not assure Plaintiff of a promotion but merely confirms that existing employees may apply for open positions on campus and, when appropriate, will be considered for promotion. The policy clearly gives the department head discretion to consider the employee's application along with other criteria to determine whether the position should be offered to an existing employee or an outside applicant. Accordingly, the Court finds that Plaintiff did not have a constitutionally protected property interest in the promotion to Chief, and Defendants are entitled to summary judgment on Plaintiff's due process claim.

**E.     Outrage Claim**[8]

The Court has dismissed Plaintiff's Title VII, 42 U.S.C. §§ 1981 and 1983 claims, all of the claims over which it has original jurisdiction. Under 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction of Plaintiff's state-law tort of outrage claim. Accordingly, the outrage claim is dismissed without prejudice.

---

[8]Plaintiff did not address his tort of outrage claim in his Brief in Support of Response to Motion for Summary Judgment (#65). As previously discussed in this order, Plaintiff moved to dismiss some claims, including his outrage claim (#63), but shortly thereafter filed a Motion to Withdraw his Motion to Dismiss (#64). The Court has granted Plaintiff's Motion to Withdraw (#64), and accordingly, the Court is addressing Plaintiff's outrage claim on Defendants' motion for summary judgment.

V.      **Conclusion**

Plaintiff's Second Motion for Extension of Time to File Response/Reply to Motion for Summary Judgment (#49) is DENIED as moot.  Plaintiff's Motion to Withdraw Motion to Dismiss Specific Parties and Claims (#64) is GRANTED.  Therefore, Plaintiff's Motion to Dismiss Specific Parties and Claims (#63) is DENIED as moot. Defendants' Motion to Strike Plaintiff's Brief in Support of his Response to the Motion for Summary Judgment (#66) is DENIED.

Defendants' Motion for Summary Judgment (#34) is GRANTED.  Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims against Defendants Davis, Gilmore, and Bennett in their individual capacities and Plaintiff's Title VII claims against the Board of Trustees and Defendants Davis, Gilmore, and Bennett in their official capacities are DISMISSED WITH PREJUDICE.  Plaintiff's tort of outrage claim is DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to close the case.

IT IS SO ORDERED this 23rd day of January, 2008.

_____
UNITED STATES MAGISTRATE JUDGE